**Ronda L. HALE**

v.

**STATE of Maine and Michael Petit.**

Supreme Judicial Court of Maine.

Argued May 6, 1981.

Decided Aug. 6, 1981.

land, Kim M. Vandermeulen, Augusta, for plaintiff.

William C. Nugent, Dept. of Human Services, Asst. Atty. Gen. (orally), Augusta, for defendants.

Before WERNICK, GODFREY, ROBERTS and CARTER, JJ.

WERNICK, Justice.

Plaintiff Ronda L. Hale has appealed from a judgment entered in the Superior Court (Cumberland County) following a hearing on a motion for summary judgment made by plaintiff. The judgment granted plaintiff certain medicaid benefits but denied her requests for declaratory and injunctive relief, class certification and attorney fees.

We sustain the appeal and remand the case for further proceedings.

Plaintiff is married to Charles Hale, and they live with Robert Hale, Charles' 13 year old son by a prior marriage. By reason of physical disability Charles receives Social Security (OASDI) and Supplemental Security Income (SSI). Both plaintiff and Robert Hale receive Social Security benefits as dependents of Charles Hale.

On September 11, 1979, plaintiff applied to the Maine Department of Human Services for medical assistance under the "medically needy" portion of this State's medicaid program. Her application was denied. Plaintiff then requested, and was given, a fair hearing at which she was represented by counsel. After this hearing the initial departmental decision was affirmed, on the grounds that plaintiff was neither individually eligible for medical assistance nor eligible by reference to her husband or step-son.

Plaintiff thereafter sought Superior Court review of the department's action, pursuant to the procedures established by 5 M.R.S.A. § 11001 *et seq.* and Rule 80B M.R. Civ.P. In her complaint she alleged that the State of Maine was depriving her, and all step-parents similarly situated, of a right to medicaid assistance guaranteed them by federal statutory law, 42 U.S.C. § 1396 *et*

Pine Tree Legal Assistance, Inc., Deborah Shaw Rice (orally), Lucinda E. White, Port-

*seq*; 42 U.S.C. § 601 *et seq*; and 42 U.S.C. § 1983. She requested: (1) certification of the class of step-parents seeking to qualify for medicaid assistance through their step-children, (2) a declaratory judgment that she and all persons within her class were eligible for medicaid assistance, and (3) attorney fees in accordance with the provisions of 42 U.S.C. § 1988.

In ruling on plaintiff's motion for summary judgment, the Superior Court interpreted the relevant provisions of Maine's medicaid program to provide medicaid assistance to plaintiff individually as a "medically needy" person. The court further concluded, however, that such coverage being provided by state law was not required by the federal law. In addition, the court denied plaintiff's requests for class certification and attorney fees.

On appeal, plaintiff challenges the correctness of the rationale by which the Superior Court awarded her the medicaid assistance, contending that she is entitled to such assistance by reason of the *mandate* of federal law. Plaintiff also claims that the Superior Court erred by denying class certification and her request for attorney fees.

*1.*

To assist understanding of the issues plaintiff raises we deem it appropriate to discuss, initially, the standards for medicaid eligibility established by federal statute, and the relationship of these federal standards to the medicaid program administered by this State.

Subchapter XIX of the federal Social Security Act, entitled "Grants to States for Medical Assistance Programs", establishes the framework for the medicaid program.

42 U.S.C. § 1396 *et seq.* Subchapter XIX makes federal funds available for distribution by individual States according to State plans created within federal statutory requirements and approved by the U.S. Department of Health and Human Services. The federal statutory requirements for State medicaid programs establish several classes of potential medicaid recipients. The first of these is generally referred to as the "categorically needy" classification. Section 1396a(a)(10)(A) of 42 U.S.C. requires State medicaid programs to provide medical assistance to those people *receiving* assistance under either the Supplemental Security Income program (SSI) established by Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, or the Aid to Families with Dependent Children (AFDC) program established by Part A of Subchapter IV of the Social Security Act, 42 U.S.C. § 601 *et seq.*[1]

Section 1396a(a)(10)(C) further provides that a State *may choose* to extend medical assistance to persons who do not qualify for the "categorically needy" level of assistance. The federal statute also provides, however, that if the State opts to provide medical assistance to persons or groups of people whose income levels *exceed* that of the "categorically needy", the State *must* provide medical assistance, albeit at a reduced level, to those persons meeting the definitional requirements for AFDC or SSI assistance but who are not *receiving* such assistance because their income exceeds the financial limits of the AFDC or SSI programs, if such persons have "insufficient . . . income and resources to meet the costs of necessary medical and remedial care." 42 U.S.C. § 1396a(a)(10)(C)(i).[2]

**1.** Section 1396a(a)(10)(A) of 42 U.S.C. states that

"A State plan for medical assistance must provide for making medical assistance available to all individuals receiving aid or assistance under any plan of the State approved under subchapter I, X, XIV or XVI, or part A of subchapter IV of this chapter, or with respect to whom supplemental security income benefits are being paid under subchapter XVI of this chapter."

As will be discussed at length subsequently in the text of this opinion, an individual must meet both definitional and financial requirements for eligibility in order to *receive* AFDC of SSI assistance.

**2.** Section 1396a(a)(10)(C) of 42 U.S.C. states:

"(C) if medical assistance is included for any group of individuals who are not described in clause (A) and who do not meet the income and resources requirements of the appropriate State plan, or the supplemental security income

Such persons described in 42 U.S.C. § 1396a(a)(10)(C)(i), who meet the definitional requirements for AFDC or SSI assistance but do not meet the financial requirements for such assistance, are classified as persons who are "medically needy." The State of Maine has chosen to provide medical assistance to the "medically needy." 22 M.R.S.A. § 3174, Maine Public Assistance Payments Manual, Chapter IV, Section B. Plaintiff's claim is that she is entitled to the benefits of the "medically needy" part of the medicaid program.

As the preceding description of the various subprograms of medicaid assistance reveals, an individual's eligibility for medicaid is directly linked to that person's eligibility for either SSI benefits or AFDC assistance. Plaintiff's claim for medicaid benefits under the "medically needy" program is premised on her eligibility for *AFDC* assistance. If plaintiff is found to satisfy the definitional requirements for *AFDC* eligibility established by 42 U.S.C. § 606(a) and (b), she is eligible for medicaid benefits by reason of 42 U.S.C. § 1396a(a)(10)(C) and this State's opting to provide assistance to the "medically needy."

The AFDC program was established "[f]or the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives." 42 U.S.C. § 601. This purpose is accomplished by providing federal financial assistance through State created and administered programs [3] to any

*needy, dependent* child and "the relative with whom . . . [such] child is living." 42 U.S.C. § 606(a) and (b). Only one adult will be included in the AFDC grant as "the relative with whom any dependent child is living", 42 U.S.C. § 606(b)(1) and § 606(c)— except that a second adult can be included who is the

"spouse of such relative if living with him and if such relative is the child's parent and the child is a dependent child by reason of the physical or mental incapacity of a parent or is a dependent child under section 607 of this title." 42 U.S.C. § 606(b)(1) and § 606(c).[4]

The concept of a child as being "dependent", on which the AFDC eligibility of a child and his adult relative turns, is defined by 42 U.S.C. § 606(a) to mean that the child is one

"who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) under the age of twenty-one and (as determined by the State in accordance with standards

program under subchapter XVI of this chapter, as the case may be, as determined in accordance with standards prescribed by the Secretary—

"(i) for making medical assistance available to all individuals who would, except for income and resources, be eligible for aid or assistance under any such State plan or to have paid with respect to them supplemental security income benefits under subchapter XVI of this chapter, and who have insufficient (as determined in accordance with comparable standards) income and resources to meet the costs of necessary medical and remedial care and services, and

"(ii) that the medical assistance made available to all individuals not described in clause (A) shall be equal in amount, duration, and scope;"

3. A State's participation in the federally funded AFDC program is accomplished through the operation of a State plan which must be set up under federal statutory guidelines and approved by the U. S. Department of Health and Human Services. The AFDC program in Maine is administered under the rules and regulations published in the Maine Public Assistance Payments Manual (MPAPM). Section 3173 of 22 M.R.S.A. gives the Department of Human Services the authority to promulgate rules and regulations to implement federal assistance programs. Insofar as the Maine Public Assistance Payments Manual is a compendium of such regulations we take the Manual to have the force and effect of law.

4. We discuss this exception later when we consider plaintiff's claim to benefits as the "spouse" of Charles Hale.

prescribed by the Secretary) a student regularly attending a school, college, or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment;"

A child who meets the statutory definition of dependency is "categorically eligible" for AFDC assistance. Whether a particular child is thus categorically eligible for AFDC as a dependent child is a question of federal law, to be determined by reference to the federal statutory definition. *Bryant v. Swoap*, 121 Cal.Rptr. 867, 48 Cal.App.3d 431 (1975); *Slochowsky v. Lavine*, 342 N.Y.S.2d 525, 73 Misc.2d 563 (1973).

■ In order to *receive* AFDC assistance a child and his adult relative must be not only categorically eligible but also financially needy. The federal statutory structure allows the states great flexibility to determine whether a particular individual or family is needy. *Lopez v. Vowell*, 471 F.2d 690 (5th Cir. 1973), *cert. denied*, 411 U.S. 939, 93 S.Ct. 1903, 36 L.Ed.2d 401. Whether an AFDC applicant meets the financial criteria for need is a question of state law. A State, however, may not utilize financial eligibility requirements as an indirect technique of restricting, or avoiding, federally mandated criteria of categorical eligibility.

In this case, plaintiff applied for medicaid benefits under the "medically needy" program. Her eligibility for such medical assistance does not depend on whether, in consequence of her satisfying both the definitional and financial criteria for AFDC assistance, she is *actually receiving AFDC aid*. Under the medically needy portion of the medicaid program the State must make

"*medical assistance* available to all individuals who would, except for income and resources, be eligible for aid or assistance under any such State plan [any plan of the State approved under subchapter I, X, XIV, or XVI of Part A of subchapter IV of the Social Security Act] ... and who have insufficient ... income and resources to meet the costs of necessary medical and remedial care and services." (emphasis added) 42 U.S.C. § 1396a(a)(10)(C)(i).

The medically needy program, as it may come into being in accordance with 42 U.S.C. § 1396a(a)(10)(C), aims to provide medical assistance to persons who are categorically eligible for AFDC assistance but who do not come within the financial limitations imposed on such assistance. Plaintiff's eligibility for *medicaid* under the *medically needy* program is thus derived from the determination whether she meets the definitional requirements for *AFDC* eligibility set forth in 42 U.S.C. § 606(a) and (b).

### 2.

Having presented the statutory background necessary to understand plaintiff's claim for medicaid benefits, we turn to her specific contention in this appeal. We discern it to have three facets: (1) the claim that a State policy exists denying plaintiff medicaid benefits under the medically needy program; (2) the assertion by plaintiff of alternative grounds of her eligibility for *AFDC*, and consequently for medicaid benefits; (3) the claim of plaintiff that her entitlement to medicaid benefits is *mandated* by federal law.

### 2–a.

The Superior Court concluded that there is no State policy that denies plaintiff as a step-mother medicaid assistance in the circumstances of this case. This determination was the basis of the Court's decision holding plaintiff entitled to medicaid assistance but denying plaintiff's request for class certification.

In contrast, unwilling to accept the conclusion of the Superior Court, both the plaintiff and the defendants agree, in the positions they assert to us, that there is a State policy by reason of which plaintiff was denied medicaid assistance, namely, a policy that excludes *step-parents* from AFDC eligibility where a natural parent is present in the home. By the operation of this policy precluding her eligibility for *AFDC* assistance, plaintiff was, in consequence, denied medicaid benefits.

■ We disagree with the Superior Court and agree with the parties. We find that there is a State policy excluding step-parents from AFDC aid when a natural parent resides in the home.

The existence of the policy is shown by the Maine Public Assistance Payments Manual (MPAPM) at Chapter II, § D, p. 6. Given the extraordinary confusion regarding the nature and source of the State policy to exclude step-parents from AFDC coverage when a natural parent is in the home, as manifested in the arguments presented to this Court, we find it necessary to explain in detail our understanding of how this policy arises.

MPAPM divides AFDC eligibility criteria into two categories: "Non-Need Factors" and "Need Factors." Such a division corresponds to the federal statutory distinction between dependency and need. Chapter II, Section A of MPAPM discusses the Non-Need Factors to be considered in evaluating an application for AFDC assistance. They include requirements concerning age, residency, citizenship, receipt of no other aid, and social security number. The requirements are taken directly from the federal statutory requirements contained in 42 U.S.C. § 602.

As to these "Non-Need Factors", the MPAPM states: (1)

"unmarried child must be living with a specified relative in an abode maintained or utilized by the relative as his home which meets legal requirements";

and (2)

"unmarried child is deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a legal parent."

Such language comes almost verbatim from the definition of dependent child contained in 42 U.S.C. § 606(a). Nowhere in the portion of the manual devoted to the Non-Need Factors for AFDC eligibility is there any statement that can be construed as the expression of a policy to exclude a step-parent from coverage with his dependent step-child. In fact, the only specific reference in

this section to step-parents appears under the criterion "Relationship and Maintenance of a Home", which includes a step-mother as a "specified relative(s) who may apply for and receive assistance on behalf of the child." MPAPM, Chapter II, § A, p. 2.

On the other hand, the "Need Factors" are subdivided in the MPAPM into two groups: Assets and Income. The assets criterion is a limitation on the maximum amount of cashable assets an individual or family group may retain. The income "requirement" consists of a set of rules to determine the amount of income available to each individual on a given grant. Once an income figure has been calculated for all individuals on a particular AFDC grant, it is compared with the relevant figures provided in the regulation establishing assistance levels for family groups of different sizes. These assistance levels are determined by taking 67.5% of the need levels set up by the State. If the income available to the family is in excess of the relevant assistance level, the family is not financially eligible for AFDC assistance. If the family is financially eligible, the amount of the grant will be the difference between the appropriate assistance level and the income available to it.

It is in the "Need Factors" provisions of the MPAPM that the State's policy prohibiting AFDC benefits to step-parents is manifested. In discussing the calculation of need and income in a family group containing a step-parent, parent and child, the regulations state that "[t]he needs of the step-parent will never be included in an assistance plan for children receiving AFDC." MPAPM, Chapter II, § D, p. 6. This regulation operates to exclude all step-parents from AFDC assistance when there is a natural parent in the home. As we explained above, the methodology for deciding who may qualify as a participant in the grant requires that the *needs* of any such person be taken into account. Hence, by prohibiting the needs of the step-parent from being considered in the determination of the assistance level, the State's policy effectively precludes the step-parent from qualifying for participation in the grant.

We conclude, therefore, that the Superior Court erred in determining that no State policy exists excluding a step-parent from AFDC, and consequently from medicaid benefits, wherever there is a natural parent in the home.

### 2–b.

Having confirmed the existence of the State policy of which plaintiff complains, we turn now to an evaluation of plaintiff's arguments in support of her claim for medicaid benefits. Plaintiff argues, alternatively, that she is eligible for *AFDC* benefits, and hence for medicaid assistance, by reason of her being either (1) the "relative with whom . . . [the] dependent child [Robert Hale] is living (the so-called "caretaker relative")"; or (2) the "spouse" of that child's "caretaker relative" Charles Hale. 42 U.S.C. § 606(b)(1).

We note at the outset of analysis that both arguments proceed from a single premise: that Robert Hale is a dependent child within the meaning given that term by 42 U.S.C. § 606(a). In addition to age-limitations not pertinent to this case, three *elements are required to satisfy the statutory definition of dependent child:* (1) the child must be

"deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent";

(2) the child must be

"living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew or niece";

and (3) must be living

"in a place of residence maintained by one or more of such relatives as his or their own home." 42 U.S.C. § 606(a).

On the record before us, we conclude as a matter of law that Robert Hale is a dependent child. His father Charles Hale is physically incapacitated, within the meaning of that phrase in 42 U.S.C. § 606(a), because he is receiving SSI. 45 C.F.R. § 233.90(c)(1)(iv) provides:

"[a] finding of eligibility for OASDI or SSI benefits, based on disability or blindness is acceptable proof of incapacity for AFDC purposes." [5]

The record discloses that Robert Hale is living with his father and stepmother in a home maintained by them.

### 2–b–1.

■ Proceeding from the valid premise that Robert Hale is a dependent child, plaintiff asserts as one of two alternative grounds of her eligibility for *AFDC* and, in consequence, for medicaid's medically needy program, that she is the "caretaker relative" of Robert Hale, within the scope of 42 U.S.C. § 606(b)(1), providing in relevant part:

"The term 'aid to families with dependent children' . . . includes (1) money payments or medical care or any type of remedial care recognized under State law to meet the needs of *the relative with whom any dependent child is living."* (emphasis added)

Section 606(c) of 42 U.S.C. defines "relative with whom any dependent child is living" as

"the individual who is one of the relatives specified in subsection (a) of this section [a "stepmother" being so "specified"] and with whom such child is living (within the meaning of such subsection) in a place of residence maintained by such individual (himself or together with any one or more of the other relatives so specified) as his (or their) own home."

---

**5.** We understand the statutory definition of dependent child to require a factual determination that a parent is dead, incapacitated or absent from the home. The regulations contained in 45 C.F.R. § 233.90 provide guidance in making such a determination. However, once such a factual determination is made under the statute and regulations, no further fact finding is required to demonstrate that the child has been in fact deprived of parental support or care by reason of the death, incapacity or absence of a parent. *See* 45 C.F.R. § 233.90(c)(*1*)(i).

Defendants contest this contention by plaintiff. They maintain that in a family composed of step-parent, natural parent and child, no one other than the *natural* parent can be the "caretaker relative."

Both § 606(a) and § 606(c) of 42 U.S.C. recognize that a dependent child may be living in a home with more than one adult "relative", but the statute affords no guidance as to which one of these can be *the* adult who can be *AFDC* eligible as the "caretaker relative" of a dependent child. Some insight, however, is provided by the Regulations. Section 233.90(c)(1)(v)(B) of 45 C.F.R. helps in this regard by the explanation it gives regarding the "relative with whom any dependent child is living." It says in relevant part:

> "A home is the family setting maintained or in process of being established, *as evidenced by assumption and continuation of responsibility for day to day care of the child . . . . A home exists so long as the relative exercises responsibility for the care and control of the child . . . .*" (emphasis added)

We interpret this regulation to signify that an adult who applies for *AFDC* assistance as the "caretaker relative" of a dependent child must demonstrate that *in fact* he (or she) has assumed, and exercises, responsibility for the day to day care of the dependent child.

This conclusion is consistent with the legislative history of the 1950 amendment to the Social Security Act which added AFDC coverage for the "relative with whom any dependent child is living." Testifying before the House Committee on Ways and Means, both Arthur J. Altmeyer, Commissioner for Social Security, and Jane Holy, Director of the Bureau of Public Assistance of the Social Security Administration, urged the Committee to adopt the proposed addition of assistance to the "relative with whom any dependent child is living" as a means to provide aid for a parent or other person caring for the child. *A Bill to Amend the Social Security Act to Enable States to Establish More Adequate Public Welfare Programs*: Hearings on H.R. 2892 Before The House Committee On Ways and Means, 81st Cong., 1st Sess. 14,399 (1949).

We so interpret the concept of "caretaker relative." We, therefore, reject the State's position that in any home where a natural parent and dependent child live with a step-parent, the step-parent cannot be the "caretaker relative" no matter what in fact the circumstances may be as to who in fact exercises the responsibility for the day-to-day care of the child,—that in such family configuration *per se* the natural parent *must* be deemed the "caretaker relative."

We further conclude, however, that in the instant situation the record fails to provide an adequate evidentiary basis to permit a decision as to whether plaintiff, rather than Charles Hale, had *in fact* assumed, and was exercising, responsibility for the day-to-day care of the dependent child Robert Hale, thus to qualify as the one adult to be the caretaker relative. The record contains neither findings of fact concerning the care of the dependent child nor any evidence from which such findings might be made. We must, therefore, remand to the Superior Court for further proceedings in this regard so that, in accordance with this opinion, appropriate evidence may be adduced, and findings of fact made, as to which of the adults in the Hale family is *in fact* responsible for, and providing, the day-to-day care of dependent child Robert Hale.

*2–b–2.*

Plaintiff's alternative argument for AFDC eligibility rests on the parenthetical portion of 42 U.S.C. § 606(b)(1), which states that AFDC assistance will be available to

> "the relative with whom any dependent child is living (and the spouse of such relative if living with him and if such relative is the child's parent and the child is a dependent child by reason of the physical or mental incapacity of a parent or is a dependent child under section 607 of this title)." (emphasis added).

Plaintiff argues that she comes within the express language of the provision appearing in parenthesis; she is the "spouse" of, and

is living with, the parent of a dependent child and the child's dependency occurred as the result of physical incapacity of a parent.

Defendants, on the other hand, argue that the legislative history shows that the matter in parenthesis was intended to provide AFDC coverage only for a second *natural* parent living in the home with a dependent child.

The statutory provision is ambiguous. It refers both to "spouse" and "parent" in a general context suggesting that the intendment may, or may not, be that "parent" must be read into the concept of spouse. Some of the legislative history suggests that the drafters contemplated that a second adult be allowed on an AFDC grant only where that second adult, in addition to being the "spouse" of a relative who is the "parent" of a dependent child, is also such child's "parent." [6]  Yet, even if "parent" were thus to be read into "spouse", the further ambiguity remains, as raised by the contention of the defendants, whether in this context "spouse-parent" must be held to mean only a *natural* parent who is the specified "spouse."

Faced with these ambiguities, as well as the current lack of guidance in the statutes, the legislative history, the regulations and the existing case law, we are unwilling to undertake decision of the issue in the posture in which the instant case is before us.

Were we to adopt the position of the defendants, the case would not be terminated. We would still be obliged to remand to the Superior Court, as we have already ruled, for further proceedings regarding plaintiff's alternative claim to be entitled to benefits as the "caretaker relative" of Robert Hale. Moreover, on remand, plaintiff may show herself entitled to benefits as such "caretaker relative", and it could thus eventuate that there was no necessity for us to decide plaintiff's alternative claim to benefits as the "spouse" of Charles Hale.

On the other hand, even if we were to reject the position taken by defendants, we could not terminate the case with a decision, *as a matter of law*, in favor of plaintiff. Plaintiff can prevail in her claim to be entitled to medicaid benefits as the "spouse" of Charles Hale only if, in addition to her being the "spouse" of Charles Hale, Charles Hale is determined to be the "caretaker relative" of Robert Hale. Since, by our decision herein, the determination as to who, as between plaintiff and Charles Hale, may be the "caretaker relative" is a question of fact not yet determined, and requiring evidence and findings lacking in the record before us, the issue of plaintiff's claim to entitlement as "spouse" of Charles Hale cannot be definitively settled without a remand and further proceedings in the Superior Court.

To summarize, then, we are unable to determine whether or not plaintiff is eligible for medically needy medicaid assistance because the record before us fails to provide an adequate basis for the evaluation of plaintiff's claims to categorical eligibility for AFDC assistance. We do decide, however, that if the Superior Court, in light of evidence that may be presented on remand, and in light of the analysis in this opinion, can conclude that plaintiff is eligible for medicaid assistance by reason of her eligibility for AFDC, the State policy we have found to exist violates plaintiff's right to assistance mandated by the federal law: the federal Social Security Act. As pointed out above, the relevant provision of the medicaid statute, 42 U.S.C. § 1396a(a)(10)(C)(i), compels a State choosing the medically needy option to provide assistance to those "categorically eligible" for AFDC assistance.

Moreover, *State of Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) shows that the State policy denying the federally created right to medicaid assistance to all step-parents when a natural parent is living in the home was properly

---

**6.**  *See*: S.Rep. No. 1589, 87th Cong., 2nd Sess. (1955) *reprinted in* [1962] *U.S. Code Cong. & Ad. News,* 1943, 1945 and 1954; and *Proposed Amendments to the Public Assistance Act of*  *1962: Hearings on H.R. 10606 Before the Senate Finance Committee,* 87th Cong., 2nd Sess., 55, 57, 66 (1962) (statements of Senator Byrd and HEW Secretary Ribicoff).

challenged by plaintiff under 42 U.S.C. § 1983.[7] The thrust of *Thiboutot* is that a State's violation of mandatory provisions of the federal Social Security Act constitutes a violation of 42 U.S.C. § 1983. The Court stated:

"The question before us is whether the phrase 'and laws,' as used in § 1983, means what it says, or whether it should be limited to some subset of laws. Given that Congress attached no modifiers to the phrase, the plain language of the statute undoubtedly embraces respondents' claim that petitioners violated the Social Security Act.

"Even were the language ambiguous, however, any doubt as to its meaning has been resolved by our several cases suggesting, explicitly or implicitly, that the § 1983 remedy broadly encompasses violations of federal statutory as well as constitutional law. *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), for example, 'held that suits in federal court under § 1983 are proper to secure compliance with the provisions of the Social Security Act on the part of participating States.'" *Id.*, 100 S.Ct. at 2504.

Also, in *Thiboutot*, the Supreme Court interpreted the Civil Rights Attorney's Fees Act of 1976, 42 U.S.C. § 1988, to provide for the award of attorney fees in cases such as the one before us if a plaintiff proves a State violation of a federal statutory right.

Thus, since we are remanding this case to the Superior Court, the Superior Court, on remand, should reconsider its denial of class certification in light of our determination that a State policy does exist excluding any step-parent from AFDC and medicaid assistance when a natural parent is in the home. We also direct the Superior Court, on remand, to undertake such fact-finding as is necessary to evaluate plaintiff's arguments for AFDC categorical eligibility.

7. Section 1983 provides:
"Every person who, under color or any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

Lastly if, on remand, the Superior Court finds plaintiff eligible for medicaid assistance by reason of her categorical eligibility for AFDC benefits, the court shall reconsider its denial of attorney fees.

The entry shall be:

Appeal sustained; judgment of the Superior Court set aside;

Case remanded to the Superior Court for further proceedings in accordance with the opinion herein.

All concurring.

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."