DECISION
This is an appeal by plaintiff, Rene Hebert, ("Hebert"), from a decision of an appeals officer of the Rhode Island Department of Human Services ("DHS") denying him Medical Assistance ("MA"). Hebert seeks a review and reversal of the DHS decision, a ruling "denouncing" the actions of DHS and its representatives, and requests any additional relief as is deemed just including an award of attorney's fees and costs. Jurisdiction over this matter is pursuant to G.L. 1956 § 42-35-15.
Facts and Travel
An AP-40F Notice dated June 21, 1994 from DHS informed Hebert that he had been found eligible for MA benefits for a closed period of time from June 21, 1994 through November 30, 1994. The notice informed Hebert that he had been found ineligible for MA benefits as of November 30, 1994 for the following reasons:
 "Your yearly income of $12,013.00 is above the income limit for the size of your family, $6,700.00, as set forth in DHS manual, Sec. 0368.05. On the basis of the flexible test policy set forth in Sec. 301.1, III, G, your income is $2,656.50 over the limit for the period from 12/1/94 to 5/31/95. For this six month period, you have already been given credit for the following medical expenses: Medicare premiums — $246.60 . . ., . . . you still have excess income of $2,409.90. When you present bills, paid or unpaid, for allowable medical expenses which total this amount, you may be eligible for the balance of the indicated eligibility period. You may use old, unpaid bills to meet this requirement, if we have not used them before in determining your eligibility."
The notice also informed Hebert of the right to an administrative hearing and the right to have his benefits continue until a decision was made in said hearing. Hebert did not request a hearing.
On November 3, 1994, Hebert filed an application for MA benefits for the period beginning December 1, 1994. At the time of the application, Hebert received monthly gross social security benefits in the amount of $921.10, a monthly pension of $100.00 and paid $41.10 per month for Part B Medicare Premiums. Hebert resided with his wife who had no income of her own.
In response to Hebert's application, DHS issued an AP-167M notice denying Hebert MA benefits. Hebert's countable income was determined to be $1001.10 per month which was in excess of the $558.33 per month medically needy standard for an individual. Hebert's excess income for the projected six month period of December 1, 1994 through May 31, 1995 was determined to be $2556.50. A credit for payment of six month, part B Medicare premiums of $41.10 equaling $256.60 was given, and the balance of excess income was calculated to be $2309.90.
On November 19, 1994, Hebert filed a DH-121 Request for a Hearing Form which contained the following Statement of Complaint:
 "In question: Two bills submitted for $696.00 not applied for spenddown. Request for original tape be available for hearing taken 4-7-94 due to discrepancies in the transcript sent to me. Departmental procedure questionable."
The bills in question were two (2) inpatient Massachusetts General Hospital bills for January 11, 1994 and July 12, 1994. Hebert requested that the original tape from his April 7, 1994 hearing be made available to him in order to resolve alleged discrepancies.
DHS received Hebert's request for a hearing in a timely manner on November 25, 1995. The hearings were conducted on January 30, 1995, February 17, 1995 and March 28, 1995. On July 5, 1996, a DHS appeals officer, in a written Administrative Hearing Decision sustained the decision of DHS. The officer determined that DHS properly issued the AP-167M in accordance with existing DHS agency policies and that the income computation contained therein was correct. The officer found that Hebert was notified of his period of MA eligibility when DHS issued the AP-40F in June, 1994, informed that his MA eligibility would end November 30, 1994 and informed of his right to file a hearing request if he disagreed. Hebert was informed that his request for the original tape could not be granted because the tape had been recycled and used for other Administrative hearings pursuant to the policy of DHS.
Hebert thereafter appealed to this court where he attacks the Administrative Hearing Decision. First, he argues that he was denied due process in that the notice provided by DHS to apprise individuals of their eligibility periods was ambiguous as to the need to appeal and failed to apprise him of the substantial change in DHS procedure in which the MA case would automatically close on the end date of the period of eligibility. Second, he argues that DHS had revised his income limit without notice or explanation. Finally, Hebert contends that his eligibility was imperiled as a result of the careless manner in which DHS managed his case.
Standard of Review
This Court's review of a DHS decision is governed by G.L. § 42-35-15(g) which provides:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences [sic], conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This Court is limited to an examination of the certified record to determine whether any legally competent evidence exists in the record to support the agency's decision. Rhode Island PublicTelecommunications Authority v. Rhode Island State LaborRelations Board, 650 A.2d 479, 485 (R.I. 1994). If any legally competent evidence exists, this Court is required to uphold the agency's conclusions unless they rest on any of the six criteria listed above. Id.
The Department of Human Services
The Rhode Island Department Human Services is an agency within the Executive Branch of State Government. G.L. 1956 §42-12-1, et seq. Pursuant to its statutory mandate, DHS is responsible for the management, supervision and control of various social service programs. Specifically, DHS is responsible for the management of state and federally funded public financial assistance programs. G.L. 1956 § 42-12-4.
General Laws 1956 § 40-8-1(c) provides in pertinent part as follows:
 "[It is] the policy of the state to provide medical assistance for those persons in this state who posses the characteristics of persons receiving public assistance under the provisions of § 40-6-4
and 40-6-7, and who do not have the income and resources to provide it for themselves or who can do so only at great financial sacrifice. Provided further that medical assistance must qualify for federal financial participation pursuant to the provisions of Title XIX of the federal Social Security Act [42 U.S.C. § 1396 et seq.] as such provisions apply to medically needy only applicants and recipients."
DHS is responsible for administering the Medical Assistance Program ("Medicaid") within the standards of eligibility, as enumerated in G.L. 1956 § 40-8-3. For all eligible individuals, DHS must pay benefits pursuant to regulations it must develop and have approved by the federal government, as comporting with federal requirements in order to receive federal funding.
Title XIX of the federal Social Security Act sets forth the provisions of the medical assistance program. 4 U.S.C. § 1396 etseq. "The purpose of the Medicaid program is to furnish medical assistance to disabled individuals who are without funding to meet the necessary medical costs." Social Security Act § 1910, as amended 42 U.S.C. § 1936. The Medicaid Program contains several categories of potential recipients. Hale v.State, 433 A.2d 374, 376 (Me 1981). The first category is classified as "categorically needy" and the second as "medically needy." Id. The former provides medical assistance to individuals receiving public assistance under either the Supplemental Security Income ("SSI") program or the Aid to Families with Dependent Children ("AFDC") Program. Id. The latter provides Medicaid to people whose financial situation exceeds the requirements of the SSI or AFDC programs, but who have "insufficient . . . income and resources to meet the costs of necessary medical and remedial care."42 U.S.C. § 1396(a)(10)(C)(i).
The state and federal government have the ability to create laws and regulations under the authority of Title XIX of the Social Security Act and G.L. 40-8 et seq. with regard to the eligibility criteria for this needs based program. In the creation of the Medicaid eligibility criteria, the state is obligated to follow the methodology determinations of the Supplemental Security Income ("SSI") program. See, 42 U.S.C. § 1396et seq.; and Social Security Act 1902(R)(2)(a). Title XIX requires that the state establish a State Plan to be approved by the United States Department of Health and Human Services ("HHS"), in order for the state to qualify for federal funding.Hale v. State, supra,; See, R.I.G.L. § 40-8-1(c) and 40-8-5.
Income Eligibility
The DHS Policy Manual sets out the procedure whereby an individual's eligibility for MA is determined. The DHS Policy Manual at Section 0330.05 states as follows: "Income eligibility will exist if the family's countable monthly income does not exceed the appropriate limit for the family size." Under said section, the monthly income limit for a single medically needy individual is $558.33 per month, which totals approximately $6,700.00 per year. For individuals whose income exceeds the limit, Section 0368.05, "Use of Excess Income," provides as follows:
 "An individual who meets the other eligibility requirements, but has income in excess of the Medically Needy Income limits may be eligible for Medical Assistance in accordance with the Flexible Test of Income.
 Flexible Test cases are determined for a six (6) month period beginning with the first day of the month in which application is received. Eligibility as Medically Needy is not established, however, until the applicant has presented 1) receipts for medical services incurred during the period of determination and/or 2) unpaid bills incurred either during the current period of determination and/or prior to application for which the individual is still liable equal to the amount of such excess income. The only exception is in the case of medical expenses which are paid by or are the liability of other medical care programs that are funded 100% with State funds . . .
 In some cases, current payments ON THE PRINCIPAL BALANCE of loans to pay off old medical bills (i.e., bills incurred prior to the current budget period) are incurred health care expenses if certain conditions are met.
 If the applicant is determined eligible under a flexible test of income, the applicant is certified for six (6) months or for the balance of the six (6) month period remaining when the excess income is absorbed . . ."
An individual's income can further be reduced by Section 0368.20. Said section provides as follows for deducting recognized medical expenses:
 "In establishing financial eligibility, excess income is applied toward reasonable incurred medical expenses that are not subject to payment by a third party (other than those medical expenses which are the liability of or paid by 100% State funded medical care programs)."
A review of the record indicates that there was no error in the computation of Hebert's income eligibility, that said computation was in compliance with the DHS policy manual and that DHS properly concluded that Hebert was not eligible for MA. Additionally, after review, this court finds that Hebert was provided adequate notice of his eligibility for benefits and his right to appeal.
In the instant matter, Hebert's eligibility was assessed as follows: Hebert's monthly income for the month was determined to be $1001.10 and $12,013.00 per year. In the calculation of Hebert's monthly income, credit was given for monthly Medicare Part B premium payments of $41.00. Hebert's monthly income exceeded the $6,700.00 limit for a medically needy individual. It was determined that Hebert did not qualify under the income limit for a couple, $600.00 per month or $7,200.00 per year, in that his wife had no income and as such was not included in determining the income limit. See, Section 0366.10.05. Accordingly, Hebert's income was in excess of the limit for medically needy individuals. Pursuant to Section 0368.20 consideration was given to the medical bills from Massachusetts General Hospital in determining whether Hebert's excess income could be reduced. However, it was determined that said bills were incurred while Hebert was in receipt of Medical Assistance and as such were the responsibility of DHS and could not properly be used toward the spend-down.
Notice
A recipient of public assistance is entitled to "adequate notice detailing the reasons for a proposed termination . . ."Goldberg v. Kelly, 397 U.S. 254, 267 (1970). This is particularly important in cases where factual premises are challenged and an incorrect application of rules is alleged. Id. at 268.
The Rhode Island Supreme Court further delineated the adequacy of notice in Avanzo v. R.I. Department of HumanServices, 625 A.2d 208 (R.I. 1993). In Avanzo, the termination notices sent to public assistance recipients "did not contain individualized reasons applicable to the recipient." Id. at 210. The court said individualized notice was required in order for the recipient to prepare for a meaningful hearing. The court stated, "[recipients] were unaware of the manner in which they failed to meet such standards . . . and were therefore deprived of a meaningful opportunity to be heard . . ." Id. at 211. The court affirmed the Superior Court's finding that DHS had failed "to apprise the recipients of the specific grounds for the agency's determination." Id. at 209.
With respect to the issue of notice, the record demonstrates that plaintiff received adequate notice regarding his period of eligibility when DHS issued the AP-40F in June, 1994. The AP-40F explicitly stated that Hebert was found to be eligible for MA under the Flexible Test of Income for the period beginning June 21, 1994 and ending November 30, 1994. The notice explained that "[u]nder the rules of the Flexible Test of Income, eligibility is limited to a specific period of time and your Medical Assistance case will automatically close on the above end date [November 30, 1994] . . . This is the only notice concerning your current period of Medical Assistance eligibility that you will receive." The notice also provided for appeal rights which included the ability to continue to receive benefits pending the outcome of said appeal. Hebert did not appeal the AP-40F notice. Rather, Hebert filed a new application for benefits commencing on December 1, 1994. Subsequently, Hebert was mailed a Letter of Denial, AP-167M, notifying him of the fact that he was found to be ineligible for MA. The notice stated in pertinent part as follows:
 "Your yearly income of $12,013.00 is above the income limit for the size of your family, $6700 as set forth in DHS Manual, Sec.(s) 0368.5. On the basis of the flexible test policy set forth in Sec. 301.3, III your income is $2656.50 over the limit for the period from 12/1/94 to 5/31/95. For this six-month period, you have already been given credit for the following medical expenses:
 Medicare Premiums 246.60 Health Insurance _______ Other __________________ Total 246.60
 Therefore, you still have excess income of $2409.90. When you present bills, paid or unpaid, for allowable medical expenses which total this amount, you may be eligible for the balance of the indicated eligibility period. You may use old, unpaid bills to meet this requirement, if we have not used them before in determining your eligibility. It is in your best interest to present evidence of medical expenses as soon as possible after they are incurred . . ."
A review of the record demonstrated that the AP-40F notice contained explicit language concerning the period of eligibility for MA, the appeal rights during that period which included the ability to continue to receive benefits pending the outcome of said appeal. Hebert chose not to take advantage of the appeal and to reapply for benefits. Further, this court is satisfied that the AP-167M provided individual and detailed notice that his application for benefits was denied due to his excess income. The notice provided by DHS was in compliance with the standards set forth in Avanzo v. Rhode Island Department of Human Service,supra.
Upon a review of the entire record, the court finds that the agency's denial of MA benefits to the plaintiff was not in excess of the statutory authority of the agency or made upon unlawful procedure, and was not clearly erroneous in view of the reliable, probative and substantial evidence of the whole record. The agency decision was not arbitrary or capricious or characterized by an abuse of discretion or affected by error of law; substantial rights of the plaintiff have not been prejudiced. Accordingly, the plaintiff's appeal is denied, and the decision of the Department of Human Services is hereby affirmed.
Attorney's Fees
Additionally, the plaintiff requests attorney's fees pursuant to the Equal Access to Justice Act, G.L. 1956 (1993 Reenactment) § 42-92-1, et seq. The plaintiff is entitled to recover reasonable attorney's fees if deemed to be the prevailing party, unless the position of the agency is substantially justified. § 42-92-3. In meeting the substantial justification test, the agency has the burden to show that its position was at least clearly reasonable, well founded in law and fact, solid though not necessarily correct. Taft v. Pare, 536 A.2d 888 (R.I. 1988).
As this Court finds that the Department of Human Services is the prevailing party in this case, the plaintiff s request for attorney's fees is denied.
With respect to all of the above, Counsel shall prepare the appropriate judgment for entry.