Dante AVANZO, Jr., William Simmons, David Ferrante, Angel Colon, and Valois Soto, on behalf of themselves and all others similarly situated

v.

RHODE ISLAND DEPARTMENT OF HUMAN SERVICES, and Robert J. Fallon, Director, Rhode Island Department of Human Services.

No. 92–662–Appeal.

Supreme Court of Rhode Island.

May 18, 1993.

Gretchen Bath, Rhode Island Legal Services, Providence, for plaintiffs.

Jeffery Pine, Atty. Gen., Jacqueline Kelly, Sp. Asst. Atty. Gen., for defendants.

## OPINION

WEISBERGER, Justice.

This case comes before us on an appeal by the director of the Rhode Island Department of Human Services and the Rhode Island Department of Human Services (department) from a judgment entered in the Superior Court declaring that certain procedures implemented by the department that deleted approximately a thousand incapacitated adults from the General Public Assistance program (GPA) did not meet the standards required by due process of law. The Superior Court judgment also accorded the members of the plaintiff class certain injunctive relief. We affirm. The facts insofar as pertinent to this appeal are as follows.

In 1992 the Legislature in its act making appropriations for the fiscal year beginning July 1, 1992, and ending June 30, 1993, adopted article 46 entitled "General Public Assistance—Eligibility." P.L. 1992, ch. 133, art. 46, § 1. Article 46 made many significant changes in the GPA program, which was designed to cover incapacitated adults who were not eligible for any other form of public assistance. General Laws

1956 (1990 Reenactment) §§ 40–6–3 through 40–6–3.9. Prior to the enactment of Article 46, adults who were unable to obtain or maintain employment by reason of physical or mental incapacity were eligible for assistance under GPA. The assistance included a small monthly stipend and payments for medical care for the duration of the adults' incapacity. Article 46 tightened the eligibility requirements significantly. Under the prior standards a partial incapacity that made the applicant unable to maintain full-time employment would qualify the applicant for certain benefits. Under article 46 the incapacity requirement was raised to total incapacity that made the applicant unable to engage in either full or part-time employment. Section 40–6–3.1 as amended by P.L.1992, ch. 133 art. 46, § 1. Moreover the total incapacity must be "reasonably expected to last for a period of at least thirty (30) days from the date the application * * * is filed with the department." Section 40–6–3.1(a)(1)(A).

Article 46 also placed a limit upon the length of time a totally incapacitated adult might obtain benefits under GPA regardless of the totality of his or her incapacity to "any six (6) months of the twelve (12) calendar months following the date eligibility is established." *Id.*

Section 40–6–3.1(a)(1)(C) and (D) provided exceptions for adults "age fifty-five (55) or older * * * who, as determined by the department, cannot be reasonably expected to * * * obtain gainful employment in the state or local economy," or adults of any age who might be determined by the department to have disabilities of such a nature as to qualify them for Federal Supplementary Security Income (SSI) benefits.

After the enactment of the budget bill including article 46, the department issued a regulation or memorandum entitled "Policy Memorandum 92–13." This policy memo was promulgated as an emergency rule and was published once in the Providence Journal on November 16, 1992. As a result of the implementation of this emergency rule, approximately a thousand persons were declared by the department to be ineligible for further benefits. In respect to the duration of GPA, the department counted benefit months prior to the effective date of the statute, July 1, 1992. Persons notified of ineligibility were given a preprinted standardized statement of the reasons for their ineligibility after a review of the file of the recipient based upon materials that had been placed in the file prior to the enactment of article 46. This notice did not contain individualized reasons for the finding of ineligibility.

In October of 1992 the named plaintiffs in this case filed an action in the Superior Court, seeking declaratory and injunctive relief and also seeking that they be certified as representatives of a class. While the action was pending on November 10, 1992, the department promulgated detailed regulations in implementation of the new statute. The regulations promulgated November 10, 1992 are not challenged in this action. The November 10, 1992 regulations were applied prospectively. Those recipients of GPA whose eligibility was terminated pursuant to policy memorandum No. 92–13 continued to be governed by that emergency rule in respect to hearings held after November 10, 1992.

The case came on for hearing before a justice of the Superior Court on plaintiffs' prayer for preliminary injunction. During the course of that hearing, the Superior Court justice certified the action as a class action, merged the hearing on preliminary injunction with a final hearing on the merits, and granted injunctive and declaratory relief.

The principal findings and holdings of the Superior Court are set forth in paragraphs 5 through 8 of the judgment and read as follows:

"5. The [C]ourt hereby DECLARES that the termination notices Defendants issued to plaintiffs and the class are inadequate in failing to provide the class members with individualized reasons for the agency determination. The notices provided only broad, conclusory language, and fail to apprise the recipients of the specific grounds for the agency's determination. As a result class members cannot determine in what respect

their case was found wanting. Due process requires individualized notice, so that recipients can be apprised of the reasons their benefits are being denied or terminated.

"6. The Court also DECLARES that Defendants deprived plaintiffs and the class of benefits without due process of law by failing to provide them with notice that the 'incapacity' standards had changed; this was contrary to R.I.G.L. sec. 42–35–4(b)(2).

"7. By promulgating and enforcing a rule which lacked adequate standards, failing to provide the class with notice of the new incapacity standards, and by failing to provide persons whose benefits were terminated with individualized notice of the reasons for the termination decision, Defendant Fallon has deprived plaintiffs and the class of their benefits without due process of law, contrary to Art. 1, sec. 2 of the R.I. Constitution and the Fourteenth Amendment to the U.S. Constitution.

"8. The Court DECLARES that Defendants promulgated a retroactive rule, by applying the statute so as to 'count' months prior to the statute's July 1, 1992 effective date, thus depriving the class of benefits without due process of law. Defendant Fallon, and his agents and employees, are hereby ENJOINED from 'counting' toward the six-month limit any months prior to July 1, 1992."

In support of its appeal the department raises four arguments. These arguments will be combined and considered as two issues in the order in which they are raised in the department's brief.

I

## THE ADEQUACY OF WRITTEN STANDARDS AND UNIFORM PROCEDURES

We are of the opinion that policy memorandum No. 92–13 did not contain standards adequate to govern the implementation of article 46 and particularly the cutoff of those receiving GPA who failed to meet the stricter standards promulgated by the statute. Pursuant to memo No. 92–13, members of the department conducted a review of the file based upon forms and information that had been developed prior to the enactment of article 46. The case files might well not contain information that would be relevant to a determination of whether the GPA recipient met the qualification for eligibility or might qualify for one of the exceptions to either the six-month cutoff, SSI eligibility, or the special category provided for certain persons over the age of fifty-five. It must be noted that the files used for the internal review process contained forms (entitled G1b) that set forth information which was relevant to standards applicable prior to the implementation of article 46. The emergency rule, "Policy Memorandum 92–13," was published once in the Providence Journal and therefore was not effectively made known to the GPA recipients who would be affected thereby.

Further and more important, the notices of termination sent to each member of the class did not contain individualized reasons applicable to the recipient. Indeed, a preprinted standardized notice was sent to each recipient whose eligibility was determined to be terminated. Such a notice would not have informed a recipient that an application for SSI benefits might have been sufficient to continue his or her eligibility. Such notices would not have informed a recipient that the finding of an additional physical or mental impairment might have maintained his or her eligibility.

The Supreme Court of the United States in the landmark case of *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) enunciated the principle that prior to a termination of welfare benefits a recipient must be given notice of the detailed reasons for his or her termination as well as an opportunity for a pretermination hearing at which he or she is entitled to come before an officer with authority to determine his or her continued eligibility. The Supreme Court's holding is encapsulated in the following statement:

"It is not enough that a welfare recipient may present his position to the decision

maker in writing or secondhand through his caseworker. Written submissions are an unrealistic option for most recipients, who lack the educational attainment necessary to write effectively and who cannot obtain professional assistance. Moreover, written submissions do not afford the flexibility of oral presentations; they do not permit the recipient to mold his argument to the issues the decision maker appears to regard as important." *Id.* at 269, 90 S.Ct. at 1021, 25 L.Ed.2d at 299–300.

A fortiori compliance with the foregoing principles would not be achieved by a caseworker's review of the file and a sending of a standard notice to all recipients without indicating the specific reason for termination.

Although informal procedures would suffice, notices containing only general conclusory language without specific relevance to the recipients' individual cases would not suffice. *See, e.g., Dilda v. Quern,* 612 F.2d 1055 (7th Cir.1980), *cert. denied,* 447 U.S. 935, 100 S.Ct. 3039, 65 L.Ed.2d 1130 (1980); *Ortiz v. Eichler,* 616 F.Supp. 1046 (D. Del.1985), *aff'd,* 794 F.2d 889 (3rd Cir. 1986).

The lack of individualized notice rendered hearings on the part of the recipients who requested hearings less than meaningful since they were not notified of the change of incapacity standards or the manner in which they failed to meet such standards. Thus the GPA recipients whose benefits were terminated pursuant to policy memorandum No. 92–13 were unaware of the change of standards and most particularly were unaware of the manner in which they failed to meet such standards of incapacity and were therefore deprived of a meaningful opportunity to be heard prior to the termination of their benefits.

## II

### THE RETROACTIVITY OF ARTICLE 46

 It is undisputed that the department, in determining eligibility, counted months prior to July 1, 1992 to determine whether a GPA recipient had already received benefits for the maximum six months out of a twelve-month period. The Superior Court held that the department erred in counting months prior to the effective date of the statute. With this holding we agree. As a general rule statutes operate prospectively from and after the effective date of the statute. It is only in the event that a statute contains clear and explicit language requiring retroactive application that a statute will be interpreted to operate retrospectively. *Lawrence v. Anheuser-Busch, Inc.,* 523 A.2d 864, 869 (R.I. 1987); *Cipriano v. Personnel Appeal Board,* 114 R.I. 141, 330 A.2d 71 (1975).

The budget statute in issue provided that "[t]his article shall take effect on July 1, 1992." P.L.1992, ch. 133, art. 46, § 5. In the absence of any other language in the article that indicated a legislative intent to operate retroactively, we are constrained to hold that the Legislature intended this article to be effective prospectively. Obviously the counting of months prior to the effective date of the statute toward the six-month eligibility limit would give the statute a retroactive effect. It is unnecessary for us to consider on this record whether the Legislature would have had the power to modify these standards retroactively. *See Brennan v. Kirby,* 529 A.2d 633, 639 (R.I.1987). There is no indication in the language of the statute that any such retroactive effect was intended.

The attempt on the part of the department to suggest that fiscal constraints made retroactivity essential cannot be considered under the heading of legislative history unless the statute itself contains an ambiguity. We find no such ambiguity in this statute to support a retroactive interpretation.

Consequently the trial justice did not err in holding that the department erroneously counted months prior to the effective date of the statute.

For the reasons stated, we are of the opinion that the Superior Court did not err in its findings of fact and conclusions of law relating to the inadequacy of general notice of the new standards of eligibility under article 46, the inadequacy of individ-

ualized notices of termination given to recipients, and the consequent inadequacy of hearings held pursuant to such inadequate notices. Therefore, the department's appeal is denied and dismissed. The judgment entered in the Superior Court is hereby affirmed. Any partial stay heretofore issued by this court of said judgment is hereby dissolved. The papers in the case may be remanded to the Superior Court.