[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter is before the Court on the appeal of Christine Perkins (Plaintiff) from a decision of the Rhode Island Department of Human Services (DHS) denying her application for child care services through the Pathways to Independence Program (Pathways), and further denying her eligibility to participate in Pathways. This Court is granted jurisdiction to hear this appeal pursuant to G.L. 1956 (1993 Reenactment) Sec. 42-35-15.
FACTS/TRAVEL
Plaintiff, Christine Perkins, is a mother of three minor children and, at the time of this action, had been receiving Supplemental Security Income (SSI) for approximately six years because of a seizure disorder. Her two older children receive Aid to Families with Dependent Children (AFDC). Her third child, Barbara Ford, does not receive AFDC because the child's father lives in the household and supports this child.
Plaintiff began her participation in the Pathways to Independence Program in August, 1991, when she began attending classes at the Community College of Rhode Island and received child care services for her two older children.
In June, 1992, DHS determined she was not eligible for participation in Pathways because she was not an AFDC recipient. Plaintiff appealed this decision and was given a hearing on June 29, 1992.
A final DHS administrative hearing decision dated July 15, 1992, found that the plaintiff was eligible for services under the Pathways Program, including child care for her two older children. Exhibit 3. The issue of child care for the third child had not yet been raised.
In that decision, the hearing officer found that, since the plaintiff "is, in fact, a client of the Department of Human Services because of her receipt of Medical Assistance services for herself, and her receipt of AFDC benefits on behalf of her minor dependent children," she is eligible for Pathways services. Exhibit 3 (July 15 Decision at 4).
DHS did not appeal that decision and child care services were provided for the two older children under the Pathways Program. In August, 1992, the plaintiff was preparing to return to school for the fall semester and applied for child care for her third child, Barbara, who was born in April, 1992.
On August 27, 1992, DHS denied child care services under the Pathways Program for Barbara only. The Notice of Agency Action states as the reason: "Barbara Ford is not eligible for AFDC and is therefore not eligible for child care services." Exhibit 4. Section 0540.10 of the DHS Manual was cited on the Notice as the underlying regulation. Exhibit 4.
Plaintiff appealed this determination by filing a Request for a Hearing form. Section 3 of the form provides a space for Agency Response, in which the agency stated: "Child is not an AFDC dependent child, nor is she receiving an income under 4-E (SSI, Foster Care, etc.). Also, another legally-responsible adult (her father) is a member of the household. He is employed and not on AFDC. Ms. Perkins is an SSI recipient with two other children who receive AFDC and Pathways support services." Exhibit 1. The plaintiff was granted a hearing on September 11, 1992.
The hearing officer's decision, dated October 22, 1992, upheld the agency's decision that Barbara is not eligible for child care services through the Pathways Program because "neither [plaintiff] nor her 4 1/2 month old daughter receive AFDC benefits. Thus, by definition, the [plaintiff] is not eligible for services through the Pathways to Independence Program." Decision at 7.
From this decision, Plaintiff filed a timely appeal.
STANDARD OF REVIEW
This Court is granted jurisdiction to review decisions of the Department of Human Services pursuant to G.L. 1956 (1993 Reenactment) Sec. 42-35-15. This statute also mandates the scope of review permitted by this Court. More specifically, Sec.42-35-15 provides:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The Court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Accordingly, when reviewing an agency's decision this Court must confine itself to a review of the record to determine if "legally competent evidence" exists to support the agency decision. Environmental Scientific Corporation v. Durfee,621 A.2d 200, 208 (R.I. 1993). "If competent evidence exists in the record considered as a whole, the court is required to uphold the agency's conclusions." Id. (citing Barrington School Committeev. Rhode Island State Labor Relations Board, 608 A.2d 1126, 1138 (R.I. 1992)). Legally competent evidence is defined as the presence of "some" or "any" evidence supporting the agency's findings. Sartor v. Coastal Resources Management Council,542 A.2d 1077, 1082-83 (R.I. 1988). Thus, the Court may reverse factual conclusions of administrative agencies only when they are "totally devoid of competent evidentiary support in the record."Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981).
Questions of law decided by administrative agencies, however, are not binding on the court. Narragansett Wire Co. v. Norberg,118 R.I. 596, 376 A.2d 1 (1977). Therefore, this Court "may review questions of law to determine what the law is and its applicability to the facts." Chenot v. Bordeleau, 561 A.2d 891
(R.I. 1989).
ADMINISTRATIVE HEARING
At the administrative hearing, the Notice of Agency Action was admitted into evidence. The hearing officer stated, "That's the Notice under appeal." Tr. at 11. Plaintiff contended that the only issue that should be addressed is that given on the Notice, namely, denial based on Barbara's not receiving AFDC. Tr. at 13.
Jill Tyler, Pathways case supervisor, and Robert Skorohod, Pathways caseworker, indicated an additional reason for denial, that the child's father lives with her and supports her. Tr. at 11. Skorohod contended that since Section 0540.10 of the DHS Manual, which allows a denial on that basis, was referenced in the Notice, the issue should be considered. Tr. at 13.
A discussion of Section 0540.10 of the DHS Manual followed.
The regulation, entitled, "Child's Eligibility for Child Care Services," reads in relevant part:
 "A child may be eligible for Child Care Services if he/she is a citizen/legal alien . . . and is living in the home of a parent(s) or caretaker relative who is an AFDC recipient and/or who is participating in one of the programs listed in Section 0540.15. . . ." (Emphasis added.)
Among the programs listed in Section 0540.15 is Pathways. Section 0540.15 reads in relevant part:
 "For a family receiving AFDC in which the supporting parent is employed, payment for Child Care Services may be made when child care costs are incurred. . . .
 Child Care Services are also available to otherwise eligible families when:
 The supporting parent/caretaker relative participates in an approved education or training component of the Pathways Program. . . ."
Plaintiff argued that, pursuant to Sections 0540.10 and 0540.15, her child, Barbara, is entitled to child care services since the parent is a Pathways participant. She also pointed out Section 0552.50.20 of the DHS Manual, entitled, "Supportive Services" which outlines services available to Pathways participants and includes child care services. Tr. at 5. As proof that the plaintiff is eligible for the Pathways Program, her attorney presented the administrative hearing decision dated July 15, 1992. That document was admitted without objection. Tr. at 3.
Ms. Tyler testified that Section 0540.10 assumes that the child has to be on AFDC to be eligible for child care (Tr. at 9), although she could not point out where that underlying assumption was stated in the regulations. Tr. at 16.
There was some discussion about that portion of Section 0540.10 which requires that the eligible child be "either":
 "Under age 13; or
 Physically or mentally incapable of caring for her- or himself, as determined by the Chief of the Child Care Unit or Pathways Program, as appropriate, based on an evaluation of a physician or a licensed or certified psychologist; or
 Under court supervision; or
 Under age 13 and would be considered an AFDC dependent child except for the receipt of Supplementary Security Income or foster care under IV-E for whom child care is necessary to permit a member of an AFDC family to accept or retain employment or to participate in Pathways-approved education or training."
Ms. Tyler said the child had to be "on AFDC and under age 13, or mentally or physically, uh, well, this, uh, this, uh, physically or mental — or the parent (wait a minute). The second, uh, well, actually, I am going to skip that paragraph. Or if they are not on AFDC, they could get child care if they fit in the second paragraph. . . ." Tr. at 9.
Plaintiff argues that, if a child meets the eligibility requirement in the first part of Section 0540.10 by having a parent who participates in Pathways, the child must meet only one of the criteria in the second part of the regulation. She points to the use of the words "either" and "or" to support her position that, because Barbara's mother participates in Pathways and Barbara is under 13, she has met the requirements of Section 0540.10. Tr. at 6.
It is interesting to note that, when the hearing officer quotes Section 0540.10, he omits the word "or" after "Under age 13". The regulation, revised in July of 1992 and in effect at the time the agency issued its Notice of Action, clearly uses the word "or".
Ms. Tyler and Mr. Skorohod further testified that Section 0540.10 would allow a denial of child care to Barbara even if she were an AFDC recipient, because her father was home during the hours requested for child care (8 a.m. to 5 p.m.), and she was not in need of the care. Tr. at 11.
The relevant part of Section 0540.10 reads:
 "A child is not eligible for child care services when . . . the hours of child care requested do not coincide with the actual hours the parent/caretaker relative participates in employment, education, or training. . . .
 The . . . Pathways social worker, in consultation with his/her supervisor, may determine that the child care is unnecessary in situations where there are individuals in the assistance unit whose needs are met based on the basis of her/his caring for the child, such as parent or caretaker, or there is another legally responsible adult in the home, e.g., an ineligible parent or a legal guardian.
 Exceptions to these two situations are allowable on a case-by-case basis. The family must provide information to the . . . Pathways supervisor that substantiates that the "responsible" individual can not provide appropriate care. For example, a family could document that the other parent is incapable of providing care."
Plaintiff argues that this case is one of the allowable exceptions, and that she had supplied the agency with information that the child's father, due to his work hours, would be sleeping when the child needed care and would, therefore, be unable to provide appropriate care. She said the father's work schedule changes weekly and that he works either the 4 p.m. to midnight or 11 p.m. to 7 a.m. shift. Tr. at 7-8.
The regulation states that the family must provide information to the agency that the responsible parent cannot provide appropriate care. Plaintiff did not meet this burden. No evidence was presented to show the father was incapable of changing his sleep schedule to provide child care while the mother was in school. No evidence was presented relative to the mother's class schedule. Without that evidence, the Pathways supervisor is, according to the regulation, authorized to deny child care.
DECISION OF THE HEARING OFFICER
In his decision, the hearing officer stated: "In this matter, I find that the Department correctly determined that the appellant and her 4 1/2 month old daughter were not eligible for child care services through the Pathways to Independence Program." Decision at 7.
That statement is incorrect in its finding relative to the mother. The Department found only that the child was not eligible for child care services because she was not an AFDC recipient. That was the sole issue on the Notice of Agency Action.
In fact, nowhere during the hearing do the representatives of the agency contest the mother's eligibility for Pathways services. They simply contest the provision of child care through Pathways for the child, Barbara. The issue at the hearing had nothing to do with the mother's eligibility for Pathways services.
The hearing officer himself made it clear that the only issue to be decided was the issue of child care for Barbara, as the following excerpts from the transcript indicate:
 Ms. Wagner: But her eligibility for Pathways is clearly established.
 Mr. Lemery: Okay, go ahead.
Tr. at 4.
 Mr. Lemery: All right. So the issue is just the, the single child and the child care for that child? Okay.
Tr. at 5.
 Mr. Lemery: . . . Then this is, this CCS-11 form, dated 8/27/92, sent to Ms. Perkins, and reads in relevant part: "Child Care Services have been denied because Barbara Ford is not eligible for AFDC and is therefore not eligible, not eligible for Child Care Services," Okay. . . . That's the Notice under appeal. Okay. . . .
Tr. at 11.
 Mr. Lemery: Okay, and the issue before me is the reason on this Notice. . . .
Tr. at 13.
 Mr. Lemery: Well, what is the issue, if I can just clarify it, then, Ms. Tyler?
 Ms. Tyler: The child's not on AFDC.
 Mr. Lemery: Okay. Go ahead.
Tr. at 15.
 Mr. Lemery: The issue is, that the child gets services that have been denied to specifically Barbara Ford for specific reasons listed on the CCS-11. The only issue before me is whether or not this decision is correct or incorrect.
Tr. at 21.
In addition to the hearing officer's own statements regarding the issue at hand, there was no evidence proffered by either witness for the agency that would support his finding that Ms. Perkins was not eligible for Pathways services. Indeed, just the opposite can be found in a careful reading of the record:
 Ms. Wagner: . . . by the way of background procedure, what I would like to point out and to offer for your reference is a prior Agency Decision involving Ms. Christine Perkins and her eligibility for the, uh, Pathways to Independence Program.
 Mr. Lemery: Okay, any objection to making that part of the record, Ms. Tyler?
 Ms. Tyler: No.
Tr. at 3.
 Ms. Wagner: But Ms. Perkins clearly is a participant in Pathways, right?
 Ms. Tyler: Yes.
Tr. at 16.
The DHS Manual Section 106, regulating agency hearings, requires a full and open discussion of all facts and policies at issue. There is no evidence on the record questioning Ms. Perkins' eligibility for Pathways. There is, however, evidence to indicate she is eligible. For instance, there is the July 15, 1992 administrative decision on the issue which was fully adjudicated at an agency hearing. DHS Manual Section 106(XI) states that such decisions are final and "binding upon all agency personnel who have responsibility for carrying them out." Section 106(XI) further states that the "full responsibility of the agency in the hearing process is discharged only when a definite decision has been made, in writing, by the appeals officer and the required action, if any, carried out." Subsection 4 of Sec. 106 XI provides that the individual must be notified of his or her right to judicial review of the decision.
The Supreme Court warned against capricious reversal or modification of the hearing officer's decision by the director. Environmental Scientific, 621 A.2d at 208.
Section 106(XI) does allow new action "in a situation which is based upon changed conditions." This is in keeping with decisions on administrative finality by our Supreme Court. "[T]he authority of a (zoning) board to reverse a prior determination is a qualified one and is not to be exercised unless there has been a substantial or material change in the circumstances or conditions intervening between the two decisions." Burke v. Zoning Board of Review of the Town of North Providence, 103 R.I. 404, 408, 238 A.2d 50, 53 (1968). Nowhere does the hearing officer state that he has found changed conditions that would warrant a reversal of the prior administrative decision. The record is devoid of references to changed conditions. There is no evidence to indicate Ms. Perkins' circumstances had changed between the adjudication of her eligibility for Pathways services which resulted in the July 15 decision, and the time of the hearing which is the subject of this appeal. The hearing officer, without the requisite finding of a material change of conditions, reverses the previous final decision. He states, "[T]he issue at hand clearly relates to the appellant's request that the Pathways to Independence Program provide child care services for her 4 1/2 month old daughter." Decision at 5. He then reviews Section 0552 of the DHS Manual regarding Pathways eligibility, and finds that Ms. Perkins is not eligible.
Even if the issue of changed conditions had been addressed at the hearing, and even if it had been found that conditions relative to Ms. Perkins' eligibility for Pathways services had changed in some material way, any adjudication of that eligibility must afford her due process. That requires "individualized notice, so that recipients can be apprised of the reasons their benefits are being denied or terminated." Avanzov. R.I. Department of Human Services, 625 A.2d 208, 210 (R.I. 1993).
The court in Avanzo held that, "prior to a termination of welfare benefits a recipient must be given notice of the detailed reasons for his or her termination as well as an opportunity for a pretermination hearing at which he or she is entitled to come before an officer with authority to determine his or her continued eligibility." Id. (citing Goldberg v. Kelly,397 U.S. 254 (1970)). In Goldberg the court found that a hearing should be held so that the recipient could "mold his argument to the issues the decision maker appears to regard as important."Id. at 211 (quoting Goldberg, 397 U.S. at 269)). In the instant case, the record evidences that the recipient did mold her arguments to what the decision maker, the hearing officer, appeared to regard as important. That was not, however, the issue he eventually decided (Decision at 7) and/or the issue he repeatedly articulated in the record: that of Barbara's ineligibility because she was not an AFDC recipient.
The record indicates that the hearing officer exceeded his discretionary power in deciding an issue that was beyond the scope of the hearing. In addition, there was no evidence on the record to support his decision. The rights of Ms. Perkins were substantially prejudiced since, without warning, the hearing officer terminated not only child care services for Barbara, but also any other Pathways services to which Ms. Perkins was entitled pursuant to the previous administrative decision.
After a review of the record, the Court finds that the DHS decision is not supported by reliable and substantial evidence.
Accordingly, the Oct. 22, 1992 decision of the Department of Human Services is reversed, and the matter is remanded to the agency for a determination of Barbara Ford's right to Pathways approved child care services as a non-recipient of AFDC.