DECISION
Each of these matters involves an appeal by a General Public Assistance applicant from an adverse decision after an administrative hearing conducted by the Rhode Island Department of Human Services on the issue of the applicant's continuing eligibility for payments due to a total and permanent disability. The matters were ordered consolidated on the Court's own motion pursuant to Rule 42 of the Superior Court Rules of Civil Procedure as the dispositive issues are identical.
In PC 92-2806, Joyce Flynn claimed an administrative hearing after receiving a Notice of Agency Action dated March 8, 1993 advising her that her General Public Assistance (GPA) payments would be discontinued as of April 1, 1993. The Notice of Agency Action is a standard printed form with blank spaces to be filled in regarding the particular individual to whom the notice is directed. The form sent to Ms. Flynn recited that "according to the most recent information we have on your situation . . . (y)our eligibility for the following program(s) has been affected." Following this declaration there appears some other printed verbiage with accompanying blank lines to be filled in. Among these is the declaration: "The reason for this action is. . ." but on the lines provided for an articulation of the reason not a single word appears.
The very next line on the form provides: "This action has been taken in accordance with the policy contained in the DHS manual. Section: . . . Title . . ." After the word Section a department official printed in the following: "elig. Cat. II" and after Title:. . ." an official printed the following numbers "0608.10.10," in reference to a section in the Department regulations. This portion of the form concludes with the statement: "Copies of this policy are available upon request from this office."
The form goes on to provide other information, including the rights a person displeased with the agency action has to file an appeal and to have assistance by legal counsel or some other appropriate person at the appellate hearing.
Nowhere on the Notice of Agency Action is Ms. Flynn advised with any particularity what it is about her physical or mental condition, or about records pertaining to her health, that led to a Department determination that she is no longer eligible for GPA benefits.
On March 11, 1993 Ms. Flynn claimed an appeal and a hearing was conducted on April 19, 1993. At the hearing Ms. Flynn was unrepresented by counsel. In addition to the Appeals Officer and Ms. Flynn, also present were Michael McCarthy, the GPA supervisor for the Cranston district office, and Maureen Corkery, of the Department's Office of Medical Review (OMR) and Central Office, the division within the Department that made the initial determination of ineligibility regarding Ms. Flynn.
On April 30, 1993 the Appeals Officer rendered a decision sustaining the Department's decision to discontinue GPA benefits. The decision contains a "findings of fact" section but this is essentially a recitation of some of the testimony taken at the April 19, 1993 hearing and a description of the documents in the case, including the DMR report. Four full pages of the nine page decision are comprised of a verbatim recitation of pertinent sections of the DHS agency policy manual, more specifically Section 0608.05, 0608.10 and 0608.10.10.
On the last page of the decision — page 9 — the Appeals Officer set forward his conclusions. Three paragraphs constitute the ultimate determination, but none of them advises the applicant or this Court as to what logical connections, if any, were made by the Appeals Officer between the facts in the record and the controlling criteria respecting eligibility:
 The Office of Medical Review consulted the Disability Determination Unit which, after reviewing the available evidence, decided that you are not a Catagory Two individual. I note that this is consistent with the other evidence which was presented at the hearing from testimony from you, the agency representative and the Office of Medical Review.
 Given the available medical evidence, I must conclude that the appellant's medical problems are not sufficient to meet the definition of total and permanent disability, as that term relates to the GPA Program, and as it relates to Catagory II eligibility. Accordingly, I must conclude that the Department's decision to discontinue GPA benefits was correct. The Department's decision is sustained and the appeal is denied.
From this decision Joyce Flynn has pursued an appeal pursuant to R.I.G.L. 42-35-15; and her principal claims on appeal are that she was denied due process by the agency's failure "to provide her with an adequate termination notice containing an individualized statement of the reasons for its determination," and that "DHS failed to make adequate findings and conclusions, contrary to R.I.G.L. 42-35-15 and the APA, and failed to specify in what precise manner Plaintiff failed to meet the standards of R.I.G.L. 40-6-3.1(a)(1)(C)." Now represented by an attorney, Ms. Flynn also seeks the award of an attorneys fee pursuant to R.I.G.L. 42-92-1, et. seq. the Equal Access to Justice for Small Businesses and Individuals Act.
In 1993 PC 93-3077, Claire Leighton presents a similar situation. On March 19, 1993 the Department of Human Services directed a Notice of Agency Action to Ms. Leighton on form GPA 56, the same standardized form employed regarding Ms. Flynn.
In the space provided for an explanation following the words: "The Reason for this action is:. . .", a department employee wrote "no evidence of total and permanent incapacity. . ." Ms. Leighton was then advised that "this action has been taken in accordance with the policy contained in the DHS manual," with handwritten references to Section "0608.10.10", and Title: "eligibility — permanent disability." The form, of course, also advised Ms. Leighton: "Copies of this policy are available upon request from this office."
In all respects the printed form was the same as that employed by DHS respecting Ms. Flynn. Nowhere on the form is any information provided to Ms. Leighton indicating how her particular condition — or medical records about it — resulted in her being determined ineligible for GPA benefits. Ms. Leighton claimed an appeal on March 23, 1993 and a hearing was conducted by the same hearing officer, James Racine, who conducted Ms. Flynn's hearing. Ms. Leighton was unrepresented by counsel; also appearing at the hearing were Terry O'Rourke, a General Assistance Social Worker; Tommy Adams, a General Assistance Supervisor from the Woonsocket office; Michael Bernstein, Administrator representing the Department of Human Services, and Paul Conley, M.D., representing the Office of Medical Review.
As in the companion case, in his May 12, 1993 decision respecting Ms. Leighton the Appeals Officer set forward "findings of fact" that recite some points in the testimony that he determined to be significant as well as a general recounting of the record, including the decision of the Office of Medical Review to discontinue Ms. Leyden's eligibility. In his findings, what the hearing officer referenced as "relevant" from the OMR decision was: "`denied capacity for relevant work, can perform light and sedentary work'." Again, as in the Flynn Administrative Hearing Decision, the Appeals Officer in Ms. Leighton's case set forward on 4 of the 9 pages a verbatim recitation of the same sections of the DHS agency policy manual, being Sections 0608.05, 0606.10 and 0608.10.10.
Interestingly — and just as in the Flynn matter — the ultimate conclusions regarding Ms. Leighton's lack of eligibility appear on page 9 of the decision. While these conclusions are more detailed than those that found their way into the Flynn
decision, the Appeals Officer again did not make any connection between findings of fact and controlling criteria:
 I have reviewed the medical evidence that was presented and note that although you suffer from many medical conditions, your physician states that you are capable of walking, sitting and reaching 3 to 4 hours per day. Your physician also states that you are capable of lifting between 16-25 pounds and are capable of carrying 16-25 pounds during an 8 hour period.
 The psychiatrist who diagnosed your major depression stated that your mental and psychological functioning is only moderately impaired.
 I have concluded that the evidence presented at the Hearing supports the decision that the Office of Medical Review made when it denied you Catagory II status.
 Given the available medical evidence, I must conclude that the appellant's medical problems are not sufficient to meet the definition of total and permanent disability, as that term relates to the GPA program and as it relates to Catagory II eligibility. Accordingly, I must conclude that the Department's decision to discontinue GPA benefits was correct. The Department's decision is sustained and the appeal is denied.
From this adverse decision of May 12, 1993, Claire Leighton appeals. Now represented by an attorney, she contends, as does Ms. Flynn, that she was deprived of "benefits without due process" as the agency failed "to provide her with an adequate termination notice containing an individualized statement of the reasons for its determination," and that the "DHS fails to make adequate findings and conclusions, contrary to R.I.G.L. 42-35-12
and the APA, and failed to specify in what precise manner Plaintiff failed to meet the standards of R.I.G.L. 40-6-.1(a)(1)(c)." Ms. Leighton also seeks an award for attorney's fees pursuant to R.I.G.L. 42-92-1 et. seq.
Because in each case the notice given to the applicant was inadequate and in derogation of rights to procedural due process secured to these individuals by the Fourteenth Amendment to the United States Constitution and Article I, Section II of the Rhode Island Constitution, the Administrative Hearing Decisions are reversed.
NOTICE
In the seminal case of Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), we are taught that "`the fundamental requisite of due process of law is the opportunity to be heard,'" 397 U.S., at 267. (citing Grannis v. Ordean,234 U.S. 385, 394 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914). Goldberg
draws for its teaching of this basic tenet of American jurisprudence on the oft — cited words of a case decided 5 years earlier holding that a hearing must be "`at a meaningful time and in a meaningful manner'", 397 U.S. at 267, (citing Armstrong v.Manzo 380 U.S. 545, 552 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). It is elementary that for the opportunity to be heard to be meaningful, one should be forewarned as to the subject matter of the hearing with sufficient detail regarding official concerns so that an intelligent explanation or rebuttal can be formulated. If the hearing is to be meaningful, the applicants for welfare assistance are entitled to an "adequate notice detailing the reasons for a proposed termination" of their GPA benefits.Goldberg v. Kelly, 397 U.S., at 267.
To adequately prepare to speak on one's behalf or to confront and cross-examine adverse witnesses, a party must be clearly apprised of the reasons for contemplated agency action. In the instant matters, Ms. Flynn and Ms. Leighton were entitled to be advised as to what particulars regarding their respective physical and/or mental conditions resulted in the original determination by the Office of Medical Review to declare them ineligible for GPA medical benefits. Just as "[t]he opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard", 397 U.S., at 268-269, so too must the notice that invites the applicant for continued benefits to exercise an option to appeal. "Capacities and circumstances" at a minimum mean "the educational attainment", 397 U.S., at 269, and the overall characteristics regarding dependency, language skills, familiarity with the workings of government bureaucracies, and the mental and physical problems that are endemic to the GPA population. In matters such as those now before the Court, we are not dealing with notice to a state university professor regarding a contemplated adverse decision respecting tenure, but rather with the denial of subsistence payments to individuals at the bottom of the economic, educational and social strata of the society who claim profound physical and mental disabilities.
The Rhode Island Supreme Court has echoed the concerns ofGoldberg v. Kelly in a decision examining the adequacy of notice by the Department of Human Services. Avanzo v. RhodeIsland Department of Human Services, 625 A.2d 208 R.I. (1993). In Avanzo, a number of applicants for GPA benefits contended that the notices terminating eligibility were inadequate. At the trial level, the Superior Court, through Mr. Justice Gagnon, determined that the "notices provided only broad, conclusory language, and failed to apprise the recipients of the specific grounds for the agency's determination. . ." Avanzo, 625 A.2d. at 209. Mr. Justice Gagnon grounded his reversal of the Department's action on, among other things, the failure of the notices to comport with the requirements of the Due Processes Clauses of Art. 1, Sec. II of the Rhode Island Constitution and the 14th Amendment to the United States Constitution. Avanzo,
625 A.2d. at 210. The Rhode Island Supreme Court relied onGoldberg v. Kelly, supra, in sustaining the Superior Court and repeated the theme that notice to be constitutional and effective must be specific:
 Although informal procedures would suffice, notices containing only general conclusory language without sufficient relevance to the recipients' individual cases would not suffice [citations omitted].
 The lack of individualized notice rendered hearings on the part of the recipients who requested hearings less than meaningful since they were not notified of the change of incapacity standards or the manner in which they failed to meet such standards. Avanzo, 625 A.2d, at 211.
Counsel for the Department contends at page 4 of each of her briefs in support of the agency action: the "provisions regarding appeals and hearings governing the GPA program do not legislate the particular form or content of notices to GPA recipients.See R.I. Gen. Laws 40-6-13." Any absence of a specific legislative prescription regarding notices hardly gives the Department the prerogative to write in vague and non-specific language when it sends its notices, for the due process clauses of the Federal and State Constitutions, as authoritatively interpreted in such cases as Goldberg v. Kelly, supra, andAvanzo v. Rhode Island Department of Human Services, supra,
mandate that the notices be specific and particularly tailored to meet the informational needs of the recipient so that he or she may effectively prepare to participate in a "meaningful" hearing. Moreover, our Legislature has joined the chorus, declaring clearly that the "notice of the Department's intended action to deny, terminate, reduce or suspend benefits," R.I.G.L.40-6-13, "shall notify said recipient of the individualized reasons and specific grounds for the department's findings of ineligibility and/or reduction in benefits under the applicable statute. . ." Compiler's Notes to R.I.G.L. 40-6-13, (citing Sec. 5 of P.L. 1993, ch. 138, art. 25).
Similarly, the Administrative Procedures Act, which governs here, provides that notice of a specific nature must be provided; and one need not consult Compiler's Notes to discern the meaning of the statute for the language chosen by the legislature in R.I.G.L. 42-35-9(b)(4) is unambiguous:
 The notice shall include . . . [A] short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved and detailed statement shall be furnished.
As this chapter also provides that an "[o]pportunity shall be afforded all parties to respond and present evidence and argument on all issues involved," R.I.G.L. 42-35-9(c), it follows that the "detailed statement" must be furnished to the affected party at some time sufficiently prior to the hearing. Again, this "notice must be of such nature as reasonably to convey the required information." Mullane v. Central Bank Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950). Seealso, Goldberg v. Kelly, supra, and Avanzo v. R.I. Dept. ofHuman Services, supra.
In the matter of Joyce Flynn v. R.I. Department of HumanServices, PC 93-2806, contrary to the assertion of counsel for the Department in her brief, (pp. 4-5), the Department did not give any reason whatsoever in its Notice for the contemplated termination; and indeed, the space provided on the Notice of Agency Action form for such information is blank.
In the matter of Claire Leighton v. R.I. Department of HumanServices, PC 93-3077, the Department filled in the blank but with a tautology that is of no use to Ms. Leighton — or anyone seeking to assist her — in preparing for her hearing: "no evidence of total and permanent incapacity." Obviously, if there were evidence of her total and permanent incapacity, Ms. Leighton would not have been facing termination. Once an Agency Official determined that there was no evidence to support her claim of eligibility for GPA benefits, a specific and detailed declaration should have been provided her so that she could meet the Agency's position with information of her own at a "meaningful" hearing.
The fact that in each of these cases the Agency utilized its form to invite the applicants to examine specific provisions of the Department manual at the Department Office does not in any way overcome the inadequacy of the "reasons" given nor can the manual provisions by and of themselves in any way constitute adequate notice. There are two reasons for this. First, the notice must advise the recipients of "the manner in which they failed to meet [the Department's] standards," Avanzo v. R.I.Department of Human Services, 625 A.2d at 211, and a mere citation to the standards without any reference as to how the standards relate to an applicant's specific medical condition does not do this. Second, due process requires that the entire Notice be contained within the document purporting to contain it without some additional and supplementary act required on the part of the recipient to locate the regulations and then apply them to her own case. As a Federal Court has written, "the burden of providing adequate notice rests with the State, and it cannot shift that burden to the individual by providing inadequate notice and inviting the claimant" to come to the Department offices to read the regulations, Ortiz v. Eichler, 616 F. Supp. 1046, 1062 (D. Del. 1985).
It is the decision of this Court that the notices in each of these matters did not adequately inform the applicants as to how their medical conditions and/or the records regarding these conditions did not meet the eligibility requirements of the Department; and thus, both Ms. Flynn and Ms. Leighton were at distinct disadvantages to put forward their claims at their hearings.
THE DECISIONS
In each of these cases, counsel for the petitioners asserts that the Department "failed to make adequate findings and conclusions, contrary to R.I.G.L. 42-35-12 and the APA. . ." The Court has reviewed the record and agrees with this contention, but need not dwell on it as it has ruled that the notices were inadequate, thereby nullifying the subsequent proceedings. Suffice it to say, in neither case did the Appeals Officer apply specific findings of fact to particular and identifiable legal standards, as required by a host of decisions. See, e.g.,Irish Partnership v. Rommel, 518 A.2d 356 (R.I. 1986); Hooperv. Goldstein, 104 R.I. 32, 241 A.2d 809 (1968); Coderre v.Zoning Board of Pawtucket, 102 R.I. 327 230 A.2d 247 (1967).
In Claire Leighton's matter, the Appeals Officer uses one page to render his conclusions and decision, and in five paragraphs we learn that Ms. Leighton suffers from a number of medical and psychological problems, including major depression, but none of these problems, individually or in combination, is related to Department regulations, which take up more than four pages of the decision.
The decision in Ms. Flynn's case is a virtual carbon copy of that sent to Ms. Leighton. The Appeals Officer, who was the same in both cases, again recites the applicant's multiple problems but does not relate them or his conclusion respecting denial to any particular provision of the regulations, which are also set forward at length in Ms. Flynn's decision.
As the regulations provide for a determination of disability based upon a single impairment or a combination of impairments, 0608.10.10, (a)-(c) and also permit a finding of disability for "conditions which constitute neither a recognized impairment nor the medical equivalent therof," 0608.10.10 (d), a decision denying GPA disability benefits must apprise the applicant, as well as any reviewing Court, as to how these governmentally established criteria apply — or do not apply — to the physical and mental conditions presented to the Appeals Officer, but that did not occur in either of these cases.
ATTORNEYS' FEES
In each case, the petitioner seeks attorneys' fees pursuant to R.I.G.L. 42-92-1, the Equal Access to Justice for Small Businesses and Individuals Act. That legislation provides that "reasonable litigation expenses" shall be awarded to an individual or small business who "prevails in contesting an Agency action, which was without substantial justification." R.I.G.L. 42-92-2(f) defines "substantial justification" as meaning that "the initial position of the Agency, as well as the Agency's position in the proceedings, has a reasonable basis in law and fact."
It is the decision of this court that the Department's position in each of these matters is without substantial justification. There clearly can be no justification for the Department's failure to provide Ms. Flynn with any reason whatsoever for the contemplated termination of her benefits; and in the matter of Ms. Leighton, as noted above, the so-called reason is a tautology which supplies Ms. Leighton with no more information than would a declaration stating "you are being denied benefits because you are ineligible to receive them."
Though the notices sent to Ms. Flynn and Ms. Leighton pre-dated our Supreme Court's decision in Avanzo, in March of 1993 the Department Administrators and its attorneys should have been familiar with the jurisprudence of the United States Supreme Court regarding procedural due process. That notice — along with an opportunity to be heard — was one of the principal foundations of due process had been established for at least forty years.See, Mullane v. Central Hanover Bank Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Numerous cases since 1950 have reiterated these principles and mandated their application in situations involving the threatened loss of government employment or benefits through state action. See,e.g., Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); Bell v. Burson 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Boddie v.Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); and Goldberg v. Kelly, supra.
In its memoranda submitted in the two matters now under review, the Department does not advert to Avanzo or the leading United States Supreme Court cases. In support of its position regarding notice, the Department contends that the applicants must satisfy the reviewing Court they were prejudiced by the failure of the Department to give them adequate notice. This proposition has not found its way into the teachings of either the United States Supreme Court or the Rhode Island Supreme Court. The absence of notice, by and of itself, puts petitioners in the posture of Ms. Flynn or Ms. Leighton at a distinct disadvantage to prepare for and participate effectively in a hearing examining their continued eligibility. In short, the Department has persisted in these proceedings in advancing an argument that has no reasonable basis in law or fact.
Accordingly, Ms. Flynn and Ms. Leighton prevail on their respective claims for attorney's fees. At this juncture of the litigation, however, no itemized bill has been submitted for consideration by the Court and comment by the Department. Upon proper application by counsel for the petitioners, the Court will examine an application for attorney's fees in conformity with the criteria set forward in Colonial Plbg. Htg. v. ContemporaryConstruction, 464 A.2d 741 (R.I. 1983).
CONCLUSION
Because the Department failed to give adequate notice to either Ms. Flynn or Ms. Leighton, each of these petitioners prevails on her appeal, and in each case benefits are reinstated and shall be paid to the petitioners retroactively to the date they were improperly removed from the GPA eligibility list.
Consideration of the amount of any attorney's fee to be awarded is deferred as noted above. The attorney for the petitioners shall prepare orders in conformity with this decision.